**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **CATFISH FARMERS OF AMERICA, *et al.*,**<br>**Plaintiffs,**<br>**v.**<br>**UNITED STATES,**<br>**Defendant.** | **Before: Hon. ________,**<br>**Judge**<br><br>**Court No. 26-03960** |

**COMPLAINT**

Plaintiffs Catfish Farmers of America ("CFA") and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, "Plaintiffs" or "Petitioners"), by and through their attorneys, allege and state as follows:

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

Plaintiffs bring this Complaint to contest portions of the Final Results issued by the U.S. Department of Commerce ("Commerce") in the 2023-2024 administrative review of the antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam. The Final Results were issued on August 10, 2026 and were published in the *Federal Register* on August 13, 2026. *See Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 91 Fed. Reg. 52,286 (Dep't Commerce Aug. 13, 2026) (final results and rescission, in part, of antidumping duty admin. rev.; 2023-2024) ("Final Results") and accompanying Issues and Decision Memorandum ("Final Decision Memo").

## JURISDICTION

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii).

## STANDING

2. CFA is a trade association, a majority of whose members manufacture or process the domestic like product, in an industry producing or processing an agricultural product. Accordingly, CFA is an interested party within the meaning of 19 U.S.C. § 1677(9)(G). CFA was also a party to the administrative review in connection with which this matter arises and actively participated in the review. Likewise, the individual manufacturers and processors are interested parties within the meaning of 19 U.S.C. § 1677(9)(C), were parties to the administrative review in connection with which this matter arises, and actively participated in the review. Accordingly, Plaintiffs have standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

3. Plaintiffs commenced this action by filing a Summons on September 11, 2026, within 30 days after the publication of the Final Results in the *Federal Register*. Summons (Sep. 11, 2026), ECF No. 1. Plaintiffs are filing this Complaint within 30 days after filing the Summons. The Summons and Complaint, therefore, are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

4. On September 20, 2024, Commerce initiated the administrative review subject to this Complaint, covering the period of review of August 1, 2023 to July 31, 2024. *Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 77,079, 77,082-84, (Dep't Commerce Sep. 20, 2024). Commerce selected Bien Dong Seafood Co., Ltd. ("Bien Dong") and NTSF Seafoods Joint Stock Company ("NTSF") (collectively, "Respondents") as mandatory respondents. *See* Letter from Javier Barrientos, Senior Int'l Trade Compliance Analyst, Off. V, AD/CVD to Shawn Thompson, Director, Off. V, AD/CVD Operations, re: *Administrative Review of Antidumping Duty Order on Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Respondent Selection* (Jan. 30, 2025).

5. On March 17, 2025, Commerce requested that all interested parties provide information for selecting a surrogate market economy country and surrogate values due to Vietnam's status as a non-market economy. *See* Letter from Aleksandras Nakutis, Program Manager, AD/CVD Operations, Off. I to All Interested Parties, re: *2023-2024 Administrative Review of the Antidumping Duty Orders on Frozen Fish Fillets from the Socialist Republic of Vietnam: Request for Economic Development, Surrogate Country, and Surrogate Value Comments and Information* (Mar. 17, 2025).

6. Petitioners timely filed comments requesting that the Department select Indonesia as the primary surrogate country for valuing the mandatory respondents' factors of production due to its economic comparability and significant production of comparable merchandise. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Comments on Surrogate Country Selection* (May 12, 2025) at 2-3. Bien Dong and NTSF filed untimely comments requesting that Commerce select India as the primary surrogate country. Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Frozen Fish Fillets from Vietnam – Comments on Economic Comparability* (May 12, 2025). Commerce rejected Respondents' comments. *See* Letter from Aleksandras Nakutis, Program Manager, AD/CVD

Operations, Off. I to Bien Dong and NTSF, re: *Frozen Fish Fillets from the Socialist Republic of Vietnam: Rejection of Bien Dong Seafood Co., Ltd. and NTSF Seafoods Joint Stock Company's Economic Comparability Comments* (May 20, 2025).

**Whole Live Fish, Feed, and Fingerling Surrogate Values**

7. Parties submitted their first round of proposed whole live fish, feed, and fingerling surrogate values on May 29, 2025. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: First Submission of Surrogate Values* (May 29, 2025) ("Petitioners' Initial SVs"); Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Frozen Fish Fillets from Vietnam – Surrogate Value Information* (May 29, 2025) ("Respondents' Initial SVs").

8. Among other proposed surrogate values, Petitioners provided information from the Ministry of Marine Affairs and Fisheries ("MMAF") of the Republic of Indonesia to value whole live *pangasius hypophthalmus*. Petitioners' Initial SVs at 4, Exhibit 5-D. Petitioners also provided price quotes from Indonesian farmers for valuing feed, fingerlings, and fish by-products. *Id.* at 4, Exhibits 5-E – 5-H. Bien Dong and NTSF provided Commerce's preliminary surrogate value memorandum from the 2022-2023 administrative review to value fingerling, feed, whole fish, and by-products. Respondents' Initial SVs at 1-2, Exhibit 2-A. The underlying information in Commerce's 2022-2023 preliminary surrogate value memorandum was obtained in part from *Undercurrent News*. *Id.* at Exhibit 2-A, pp. 3-4.

9. Parties submitted rebuttal information in response to initial surrogate values on June 16, 2026. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Initial Rebuttal Surrogate Value Information* (June 16, 2026); Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Frozen Fish Fillets from Vietnam*

– *Surrogate Value Rebuttal Comments* (June 16, 2026) ("Respondents' Initial Rebuttal SVs"). Respondents' submission included rebuttal information on Petitioners' fingerling, feed, and whole fish information. *See* Respondents' Initial Rebuttal SVs at 2. This included an affidavit from the Chairman of the Indonesian Catfish Association regarding the Indonesian government's official statistics for pangasius production and prices. *See id.* at 2, Exhibit 4.

10. Before the preliminary results, parties submitted a second, and final, round of potential surrogate values for whole live fish, feed, fingerlings, and by-products. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Submission of Surrogate Values* (Jan. 12, 2026) ("Petitioners' Final SVs"); Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Frozen Fish Fillets from Vietnam – Thirty Day Surrogate Value Information* (Jan. 12, 2026) ("Respondents' Final SVs"). Petitioners' submission included a publicly available report from the Kerala University of Fisheries and Ocean Studies ("Kerala Report"), which included information for valuing whole live fish, fingerlings, feed, and by-products. Petitioners' Final SVs at 3, Exhibit 6. Respondents submitted the final surrogate value submission filed by Vinh Hoan Corporation in the preceding administrative review, which contained the information from *Undercurrent News* that Commerce used in its 2022-2023 preliminary results. *See* Respondents' Final SVs at 2, Exhibit 2.

11. Shortly thereafter, parties submitted rebuttal information on the final round of surrogate value information. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Rebuttal Surrogate Value Information* (Jan. 26, 2026) ("Petitioners' Final Rebuttal SVs"); Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Frozen Fish Fillets from Vietnam – Surrogate Value Rebuttal Comments* (Jan. 26, 2026) ("Respondents' Final Rebuttal SVs"). Petitioners provided information demonstrating that

*Undercurrent News* has discontinued its pricing information for Indonesian feed, fingerling, and whole fish data. Petitioners' Final Rebuttal SVs at 2, Exhibit 1. Petitioners also provided information demonstrating that *Undercurrent News* would not share its underlying methodology. *Id.* at 2, Exhibit 2.

12. The Department issued its preliminary determination on February 5, 2026. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 91 Fed. Reg. 6,192 (Dep't Commerce Feb. 11, 2026) (prelim. results of antidumping duty admin. rev.; prelim. recission of admin. rev.; and recission of admin. rev., in part; 2023-2024) ("Preliminary Results") and accompanying Preliminary Decision Memorandum ("Preliminary Decision Memo"). Commerce published the Preliminary Results on February 11, 2026. *See* Preliminary Results.

13. In its preliminary decision, Commerce relied on 2022 information from *Undercurrent News* to value whole live fish, feed, and fingerlings. *See* Memorandum from Blair Hood, Int'l Trade Compliance Analyst, AD/CVD Operations, Off. I to The File, re: *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Surrogate Values for the Preliminary Results of Review* (Feb. 5, 2026) ("Prelim. SV Memo") at 3. Because these prices were outdated, Commerce inflated prices using producer price index ("PPI") data from the Indonesian Central Bank. *Id.* Commerce relied on Petitioners' price lists and quotes for fish by-products. *Id.* at 4.

14. Commerce did not rely on MMAF data for whole live fish or the Kerala Report for whole live fish, fingerling, or feed factors of production. *See* Preliminary Decision Memo at 21. Commerce claimed that the underlying data in the MMAF and Kerala Report were not public and could therefore not be evaluated under its standard criteria. *Id.* In contrast, Commerce claimed that the *Undercurrent News* data "are more specific, and they also meet the additional SV selection criteria, because they are public, tax and duty exclusive, and reflect a broad market average." *Id.*

15. In its case brief, Petitioners explained that Commerce improperly disregarded the Kerala Report. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Petitioners' Case Brief* (Apr. 14, 2026) ("Petitioners' Case Br."). Petitioners highlighted that the Kerala Report satisfied all five of Commerce's Policy Bulletin 04.1 criteria for selecting among surrogate values. *Id.* at 6-14. Specifically, the Kerala Report is (1) contemporaneous, (2) specific to the inputs at issue, (3) net of taxes and duties, (4) publicly available, and (5) represents broad market averages. *Id.* at 8. In contrast, *Undercurrent News* data was not contemporaneous, less specific, less detailed, and no longer publicly available. *Id.* at 9, 13-14. Thus, the Kerala Report reflected the "best available information."

16. In its final decision, Commerce found that the Kerala Report "satisfie{d} three of the five criteria in Policy Bulletin 04.1," while *Undercurrent News* "satisfie{d} two of the five criteria." Final Decision Memo at 10. Specifically, Commerce noted that *Undercurrent News* was not contemporaneous, lacked details regarding whether the data is a broad market average, and was not clearly tax and duty exclusive. *Id.* Nevertheless, Commerce based surrogate values for whole live fish, feed, and fingerlings on an average of values from *Undercurrent News* and the Kerala Report. *See* Memorandum from Blair Hood, Int'l Trade Compliance Analyst, AD/CVD Operations, Off. I & Gemma Larsen, Int'l Trade Compliance Analyst, AD/CVD Operations, Off. I to The File, re: *Administrative Review of the Antidumping Duty Order on Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2023-2024: Final Surrogate Values Memorandum* (Aug. 10, 2026) at 2-7.

## International Freight

17. Parties also submitted surrogate values for international freight in their initial surrogate value submissions. *See* Petitioners' Initial SVs at 6, Exhibits 12-A and 12-B; Respondents' Initial SVs at 3, Exhibit 18. Petitioners and Respondents both provided international freight prices from *Descartes* for transporting containers of differing sizes between Ho Chi Minh City, Vietnam and various U.S. ports. Petitioners' Initial SVs at Exhibit 12-A; Respondents Initial SVs at Exhibit 18. Petitioners provided accompanying documentation from *Descartes* itemizing the base freight rate (*i.e.* "Ocean Freight") and attendant fees for each U.S. port. *See* Petitioners' Initial SVs at Exhibit 12-B. Petitioners calculated a surrogate value for international freight based on the base freight rate plus attendant fees that were not related to brokerage and handling ("B&H") charges. *Id.* at Exhibit 12-A. Respondents also provided base freight rates but with none of the attendant fees. Respondents' Initial SVs at Exhibit 18.

18. Prior to the preliminary decision, Respondents submitted additional *Descartes* pricing that supplemented its original base rate-only freight rates with quotes that included "port congestion surcharges" and "DOC handling fees." *See* Respondents' Final SVs at Exhibit 7. Respondents updated surrogate international freight rate increased from $0.105/kg to $0.196/kg. *See* Respondents' Initial SVs at Exhibit 1; Respondents' Final SVs at Exhibit 6. Petitioners did not supplement its international freight information because the initial submission already included the base ocean freight rate plus relevant fees.

19. On rebuttal, Petitioners noted that Respondents' supplemental international freight quotes did not include the "Rate Detail" pages that accompany every quote, which are needed to ensure the quotes do not include freight carriers from non-market economies. *See* Petitioners' Final Rebuttal SVs at 3. Alternatively, Petitioners provided a recalculated rate from the Respondents'

information that accounted for omitted charges unrelated to B&H (*e.g.*, global fuel surcharges, port security charges, maritime security levies). *See* Petitioners' Final Rebuttal SVs at 3, Exhibit 3. When adjusted to reflect all international freight fees, Respondents' international freight surrogate value was $0.304/kg. Petitioners' Final Rebuttal SVs at Exhibit 3.

20. In the preliminary decision, Commerce based the international freight surrogate on Respondents' *Descartes* average shipping price per container (*i.e.* $0.196/kg). Prelim. SV Memo at 5 n.32 (citing Respondents Final SVs at Exhibit 6). Commerce provided no rationale for ignoring Petitioners' information from the same source. *See id.*; *see also* Preliminary Decision Memo at 24 (discussing B&H, truck freight, and inland boat freight but not international freight).

21. In their case brief, Petitioners argued that Commerce erred in its selection of an international freight surrogate, particularly given Respondents' lack of supporting information and omission of relevant costs that are normally included in the international freight surrogate. *See* Petitioners' Case Br. at 14. Petitioners provided a revised freight rate that included Respondents' and Petitioners' *Descartes* rates and properly included the non-B&H costs that Respondents' omitted. *See* Petitioners' Case Br. at 14-15, Attachment I. The corrected international freight rate was $0.3037. *Id.* at Attachment I. Petitioners also argued that Respondents' container weights, used to calculate per-kilogram rates, were unsupported. *Id.* at 15.

22. In its final decision, Commerce continued to use only Respondents' *Descartes* price quotes to value international freight. Final Decision Memo at 17. According to Commerce, Petitioners' international freight surrogate, which was based on itemized *Descartes* price quotes, "include{d} port security, chassis usage, terminal handling, global fuel, documentation, and security manifest fees" that were included in NTSF's B&H and U.S. duty database fields. Final Decision Memo at 18. Commerce also pointed to the B&H surrogate value information, which

included border compliance and documentary compliance fees, to justify its outright dismissal of Petitioners' *Descartes* data, including dismissing the separate line item for base ocean freight. Final Decision Memo at 17-18. According to Commerce, "using petitioner's {sic} *Descartes* data would lead to double counting and {was} less specific than alternative data already on the record." Final Decision Memo at 18. As a result, Commerce "disagree{d} with petitioner's argument that {sic} and finds that the respondents' *Descartes* data is more specific to the charges." *Id.*

23. Commerce revised the container sizes to calculate international freight, relying on Petitioners' information for container weights. Final Decision Memo at 17. When correcting for Respondents' unsupported per-container weight, the final international freight surrogate value was $0.219/kg. *See* Final SV Memo at 11, Attachment.

24. Based in part on the selected whole live fish, fingerling, feed, and international freight values, Commerce calculated a weighted-average dumping margin of $1.00 per-kilogram for Bien Dong and $0.38 per-kilogram for NTSF. *See* Final Results at 52,287. Non-selected, separate rate respondents Can Tho Import Export Seafood Joint Stock Company and Nam Viet Corporation received a calculated rate of $0.84 per-kilogram based on the weighted-average of Bien Dong's and NTSF's calculated dumping margins. *Id.*

## CLAIMS AND BASES FOR RELIEF

### Count I

25. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 24.

26. Commerce's decision that *Undercurrent News* constitutes the "best available information" for whole live fish, feed, and fingerlings surrogate values and inclusion of data from this source in an average surrogate value is not supported by substantial evidence, is inadequately explained, and is otherwise contrary to law.

### Count II

27. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 26.

28. Commerce's claim that Petitioners' international freight information from *Descartes* included of brokerage and handling charges is not supported by substantial evidence, is inadequately explained, and is otherwise contrary to law.

### Count III

29. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 28.

30. Commerce's decision to disregard Petitioners' international freight information from *Descartes* and instead rely on Respondents' *Descartes* information for the international freight surrogate value is not supported by substantial evidence, is inadequately explained, and is otherwise contrary to law.

**Court No. 26-3960**

## REQUEST FOR JUDGMENT AND RELIEF

For the reasons stated in this Complaint, Plaintiffs respectfully requests that the Court:

(1) Hold that Commerce's Final Results in the 2023-2024 antidumping duty administrative review of *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam* are not supported by substantial evidence on the record, are inadequately explained, and are otherwise not in accordance with law; and

(2) Remand the Final Results to Commerce for disposition consistent with the Court's final opinion.

Respectfully submitted,

*/s/ Nazak Nikakhtar*
Nazak Nikakhtar, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
John Allen Riggins, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for CFA, et. al.*

Dated: October 9, 2026